# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. SCOTT PARKER, | ) ) ) | |
| Petitioner, | ) ) | No. 09-cv-07947 |
| v. | ) ) | Judge Andrea R. Wood |
| WALTER NICHOLSON, Warden, Stateville Correctional Center,[1] | ) ) ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

In 2002, Scott Parker was convicted of felony murder, involuntary manslaughter, and residential burglary, all in connection with the death of Catherine Kelley. Parker was sentenced to 60 years in prison, and he is now serving his sentence at the Statesville Correctional Center in Joliet, Illinois. On December 23, 2009, Parker filed a *pro se* petition in this Court seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, Parker claims that he received ineffective assistance of counsel in connection with a pretrial evidentiary hearing regarding the admission of certain incriminating statements. Parker also claims that the Illinois state courts independently erred in admitting those incriminating statements. Finally, Parker maintains that the Illinois state courts erred in convicting him of both first-degree murder and involuntary manslaughter. For the reasons explained below, the petition is denied.

---

[1] This case was initially captioned with Marcus Hardy named as Respondent in his capacity as Warden at Stateville Correctional Center. Because Walter Nicholson now holds that position, he has been substituted as Respondent. *See* Fed. R. Civ. P. 25(d); Rule 2(a) of the Rules Governing Section 2254 Cases; *Rumsfeld v. Padilla*, 542 U.S. 426, 436 (2004).

**BACKGROUND FACTS**

A federal court considering a habeas corpus petition presumes correct the factual findings made by the last state court to adjudicate the case on the merits, unless those findings are rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Rever v. Acevedo*, 590 F.3d 533, 537 (7th Cir. 2010); *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003). The Illinois Appellate Court made factual findings in two opinions: *People v. Parker*, 801 N.E.2d 162 (Ill. App. Ct. 2003), and *People v. Parker*, No. 3-04-0574 (Ill. App. Ct. 2009). Parker does not challenge those factual findings and thus this Court accepts them as true. *See Mendiola v. Schomig*, 224 F.3d 589, 592–93 (7th Cir. 2000) (stating that state appellate court's factual findings are entitled to the same deference afforded to state trial court's findings).

I.   **Offense Conduct**

On November 12, 2001, Parker, who had previously performed maintenance work for Kelley, went to her home in Moline, Illinois. *Parker*, 801 N.E.2d at 164. Kelley's car was in the driveway, but she did not answer her door when Parker knocked. *Id.* Nonetheless, Parker entered the home, saw Kelley's purse on the table, and took a credit card from it. *Id.* Parker then heard a noise in the basement and walked toward the basement stairwell, where he encountered Kelley at the top of the stairs. *Id.* Kelley began screaming and Parker grabbed onto her as she ran or slipped back down the stairs. *Id.*

Parker fell going down the stairs. *Id.* As he got up, he wrapped his arm around Kelley and held on to her "real tight" because she was screaming and yelling. *Id.* Parker then tried to tie a white piece of cloth around Kelley's mouth. *Id.* An autopsy later revealed that Kelley died from strangulation, probably by the bathrobe belt found tied around her. *Id.* Parker used the credit card he had taken to buy power tools that he then pawned. *Id.* He was arrested by police on November

16, 2001 at a bus stop in Davenport, Iowa, pursuant to an arrest warrant for forgery and theft based on his use of Kelley's credit card. *Id.*

## II. Parker's Arrest and Interrogation

The Davenport police informed the Moline police of Parker's arrest, and two Moline police detectives, Pablo Reyna and Douglas Garrison, went to Davenport to interview Parker. *Id.* Garrison informed Parker of his *Miranda* rights and Parker acknowledged that he understood them. *Id.* Parker was then given a form containing the *Miranda* rights and asked to place his initials next to each statement on the form. *Id.* Parker began initialing the form but stopped and said "I think I need a lawyer." *Id.* He then said, "I didn't mean to hurt her." *Id.* Reyna and Garrison then left and went to another room to interview Parker's mother. *Id.*

According to the Illinois Appellate Court's factual recitation, approximately ten minutes after Reyna and Garrison left, Davenport Police Detective Thomas entered the interview room and told Parker that he was going to read him the warrant that had been the basis for his arrest. *Id.* After Thomas began reading the warrant, Parker interrupted him and made some inculpatory statements. *Id.* Thomas did not respond. *Id.* Parker then asked Thomas to get Reyna. *Id.* Thomas told Reyna and Garrison what had occurred and they went back into the interview room. *Id.*

According to Parker, Thomas read Parker the warrant and told him that it would be to his benefit to speak to the detectives. (*People v. Parker*, No. 3-04-0574 (Ill. App. Ct. 2009) at 4, Ex. E to Resp.'s Answer, Dkt. No. 13-6 (recounting Parker's testimony at evidentiary hearing in his post-conviction proceeding).) Parker then asked Thomas about the whereabouts of his mother; Thomas replied that she was being questioned; and Parker asked for the detectives. (*Id.* at 4–5.)

3

After Parker said that he wished to speak without his lawyer present, he was re-*Mirandized* and signed a written waiver of his rights. *Parker*, 801 N.E.2d at 164. Parker subsequently gave a video-taped statement in which he admitted to killing Kelley. *Id.* at 164–65.

### III. Adjudicative Proceedings

#### A. Trial Court Proceedings

On March 1, 2002, the trial court held a hearing on Parker's pretrial motion to suppress his confession. (*People v. Parker*, No. 3-04-0574 (Ill. App. Ct. 2009) at 2, Ex. E to Resp.'s Answer, Dkt. No. 13-6.) Parker's trial counsel did not present any evidence at the hearing. *Id.* Instead, Parker's trial counsel argued that Thomas re-initiated contact with Parker by re-entering the room to read the warrant to Parker. *Id.* The trial court disagreed, finding that Parker was the one who re-initiated contact with the detectives, and thus denied Parker's motion to suppress. *Id.* at 2–3. In May 2002, following a jury trial in the Circuit Court of Rock Island County, Parker was convicted of murder, involuntary manslaughter, and residential burglary—based on the killing of Catherine Kelley and burglarizing of her home—and sentenced to a term of 60 years of imprisonment for murder. *Id.* at 3. Parker then appealed. *Id.*

#### B. Direct Appeal

On direct appeal, Parker argued that:

(1) the trial court erroneously denied his motion to suppress statements that he made to police after invoking his right to counsel;

(2) his trial counsel was ineffective for failing to call him to testify at the suppression hearing;

(3) the trial court violated Illinois Supreme Court Rule 605(a) by failing to advise him of the need to file a motion for reconsideration if he wished to challenge his sentence; and

(4) he was entitled to an additional day of sentencing credit.

*Parker*, 801 N.E.2d at 165.

The Illinois Appellate Court affirmed Parker's conviction but remanded the case so that the trial court could properly advise him under Illinois Supreme Court Rule 605(a) regarding the need to file a motion for reconsideration if wished to challenge his sentence. *Id.* at 169. The Illinois Appellate Court also ordered the trial court to amend the sentencing order to reflect an additional day of sentencing credit. *Id.* The Appellate Court declined to reach Parker's ineffective assistance of counsel claim, however, instead finding that the record on the issue was inadequate and further concluding that it was more appropriate for disposition in a post-conviction proceeding where a complete record could be made. *Id.* Parker did not file a petition for leave to appeal ("PLA") seeking review of the judgment by the Illinois Supreme Court.

### C. Initial State Post-Conviction Proceedings

Following remand to the trial court, Parker filed a motion to reconsider his sentence. The trial court denied the motion and Parker again appealed. During the pendency of that appeal, Parker filed a petition for post-conviction relief pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS5/122-1, *et seq.* After an evidentiary hearing, the trial court denied Parker's request for post-conviction relief. Parker appealed the denial of his post-conviction petition, and that appeal was consolidated with his appeal of the trial court's denial of his motion to reconsider his sentence. (*People v. Parker*, No. 3-04-0574 (Ill. App. Ct. 2009) at 1–2, Ex. E to Resp.'s Answer, Dkt. No. 13-6.)

In his consolidated appeal, Parker argued that the trial court erred by (1) denying his post-conviction claim that his counsel was ineffective for failing to call him to testify at his suppression hearing; and (2) sentencing him to a term of 60 years of imprisonment. The Illinois Appellate Court rejected Parker's arguments and affirmed his conviction. (*Id.* at 6, 12.)

Relevantly, the Illinois Appellate Court rejected Parker's ineffective assistance claim because he failed to demonstrate a reasonable probability that the outcome of the suppression hearing would have been different had he testified. (*Id.* at 11–12.)

Parker next filed a PLA in the Illinois Supreme Court, raising the claim that the police officer's purported re-initiation of contact with him violated his Fifth Amendment rights and therefore Parker's counsel was ineffective in failing to have him testify at the suppression hearing. (Pet. for Leave to Appeal at 2–3, Ex. L to Resp.'s Answer, Dkt. No. 13-13.) The Illinois Supreme Court denied the PLA on September 30, 2009. (Order Denying Pet. for Leave to Appeal, *People v. Parker*, No. 108399 (Ill. 2009), Ex. M to Resp.'s Answer, Dkt. No. 13-14.) Parker then filed the instant habeas petition.

### D.     Initial Federal Habeas Petition Proceedings

Parker initially asserted five claims in his petition before this Court:

(1)   that he was denied his right to effective assistance of counsel when his attorney failed to call him to testify at the pretrial suppression hearing;

(2)   that he was denied his right to effective assistance of trial, appellate, and post-conviction counsel when each attorney failed to present evidence to impeach the testimony of Officer Thomas, who testified for the State at the suppression hearing;

(3)   that he was denied due process when the trial court denied his post-conviction petition regarding the suppression of his statements;

(4)   that he was denied his right to be free from self-incrimination because his statements to the police were involuntary due to Officer Thomas's wrongful re-initiation of the interrogation; and

(5)   that his 60-year maximum sentence violated his right to due process, as his prior offenses were mischaracterized.

(Pet. at 6–9, Dkt. No. 5.) Respondent answered the petition in February 2010, contending that Claim (1) was meritless and that Claims (2)–(5) were procedurally defaulted because they were

6

not presented for one complete round of state court review prior to the federal habeas petition. (Resp.'s Answer at 9, 27, Dkt. No. 12.) In response, Parker asked this Court to stay proceedings on his petition while he initiated additional state-court litigation to cure any defaults. (Mot. to Hold Pending Habeas Corpus Pet. in Abeyance, Dkt. No. 18.) This Court granted the motion. (Order, Dkt. No. 19.)

### E. Subsequent Illinois Post-Conviction Proceedings

Back in state court again, Parker filed a petition for leave to file a successive post-conviction petition, pursuant to 725 ILCS 5/122-1 *et seq.*, arguing that his attorney for his appeal from the denial of his ***initial*** post-conviction petition was ineffective for not arguing his post-conviction trial counsel's ineffectiveness. Specifically, Parker asserted that post-conviction trial counsel:

> (1) failed to highlight and pursue alleged discrepancies in the hearing testimony of Officer Thomas and another officer at the scene, Officer Brown, in the evidentiary hearing;
>
> (2) failed to clarify mistakes in the presentence report; and
>
> (3) failed to argue that Parker's past offenses had been mischaracterized as violent felonies during sentencing.

(Pet. for Leave to File Succ. Pet. for Post-conviction Relief, Ex. P. to Resp.'s Response to Amend. and Supp. Pet. at 4–5, Dkt. No. 68-1.) Parker also claimed that his post-conviction appellate counsel was ineffective because he failed to argue that counsel for Parker's motion to reconsider his sentence was ineffective and generally "fail[ed] to raise [his] right to post-conviction relief." (*Id.* at 5.)

The trial court denied Parker's request for leave to file the successive petition on August 25, 2010, concluding that he had failed to establish cause and prejudice as required for a successive post-conviction petition under Illinois law. (Order on Pet. for Leave to File Succ. Pet.,

7

Ex. Q. to Resp.'s Response to Amend. and Supp. Pet. at 1–2, Dkt. No. 68-2.) Parker appealed that ruling, and his appointed counsel moved to withdraw on the ground that there were no non-frivolous grounds for appeal. The Illinois Appellate Court granted the motion to withdraw and affirmed the trial court's judgment, agreeing with the trial court's conclusion that Parker had not shown cause and prejudice. (Order at 6, *People v. Parker*, No. 3-10-0695 (Ill. App. Ct. 2011), Ex. T to Resp.'s Response to Amend. and Supp. Pet., Dkt. No. 68-5.) The Illinois Supreme Court denied Parker's ensuing PLA on March 28, 2012. *People v. Parker*, 968 N.E.2d 86 (Ill. 2012) (Table).

In November 2011, while his appeal from the denial of his motion to file a successive post-conviction petition was pending, Parker filed another petition for relief from the judgment against him pursuant to 735 ILCS 5/2-1401. (Pet. for Vacate Void/Null Judg., Ex. W. to Resp.'s Response to Amend. and Supp. Pet. at 1–2, Dkt. No. 68-8.) That petition alleged that his judgment of conviction was void because the guilty verdicts for felony murder and involuntary manslaughter were legally inconsistent. (*Id.*) In May 2012, the trial court dismissed the petition as time-barred. (Order at 1–2, *People v. Parker*, No. 01 CF 964 (Ill. Circ. Ct. Rock Island Cty. 2012), Ex. X to Resp.'s Response to Amend. and Supp. Pet., Dkt. No. 68-9.) Parker appealed yet again, and his then-current counsel (like prior counsel) moved to withdraw on the ground that there were no non-frivolous grounds for appeal. The Illinois Appellate Court granted the motion to withdraw and affirmed the trial court's judgment in August 2013, holding that the dismissal of Parker's 2-1401 petition was proper. (Order at 1–2, *People v. Parker*, No. 3-12-0452 (Ill. App. Ct. 2013), Ex. AA to Resp.'s Response to Amend. and Supp. Pet., Dkt. No. 68-12.) The Illinois Supreme Court denied Parker's ensuing PLA on November 27, 2013. *People v. Parker*, 2 N.E.3d 1049 (Ill. 2013) (Table).

8

### F. Amendments and Supplement to Parker's Federal Habeas Petition

On March 12, 2014, Parker filed his amended and supplemented habeas petition with this Court. (Dkt. No. 60.) In it, he continues to assert Claim (1) listed above from his original federal habeas petition. (*Id.* at 3.) In addition, Parker represents that he has now completed a round of state court review as to Claims (2)–(4) listed above, such that they should no longer be considered procedurally defaulted. (*Id.*) Finally, Parker withdraws his original Claim (5) but asks the Court to allow him to bring a new, amended Claim 5 in its place—namely, that his due process rights were violated when he was convicted of both first-degree murder and involuntary manslaughter for the death of Kelley. (*Id.* at 3–8.)

## DISCUSSION

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a court may not grant a petition for writ of habeas corpus unless a state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Before reviewing a state court decision, however, the federal court must determine whether the petitioner fairly presented his federal claims to the state courts, as any claim not so presented is deemed procedurally defaulted. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005) ("The petitioner must establish that he fully and fairly presented his claims to the state appellate courts, thus giving the state courts a meaningful opportunity to consider the substance of the claims that he later presents in his federal challenge."). To qualify as fair presentment, the claim must be asserted on one complete round of state court review, either on direct appeal or in post-conviction proceedings. *Lewis v. Sternes*,

390 F.3d 1019, 1025 (7th Cir. 2004). In Illinois, this means completing appeals up to and including filing of a PLA with the Illinois Supreme Court. *O'Sullivan*, 526 U.S. at 845–46.

When a petitioner has failed to fairly present his federal constitutional claim to the state courts and the opportunity to raise that claim has passed, the claim is procedurally defaulted for purposes of federal habeas review. *Gonzales v. Mize*, 565 F.3d 373, 380 (7th Cir. 2009). Additionally, "when a state court resolves a federal claim by resting its decision on a state law ground independent of the federal question and adequate to support the judgment, [the federal courts] will not review the question of federal law." *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009). This includes when a petitioner's claims were procedurally defaulted because they were not raised in accord with the state's procedural rules. *Id.*

If a claim has been procedurally defaulted, then a federal court may review it only if the petitioner shows either cause for his failure to raise the claim and actual prejudice as a result, or that refusal to consider the defaulted claim would result in a fundamental miscarriage of justice. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007). The United States Supreme Court has defined cause sufficient to excuse procedural default as "some objective factor external to the defense" that precluded a petitioner from pursuing his claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Without cause, a defaulted claim is reviewable only when refusal to consider it would result in a fundamental miscarriage of justice; that is, when the constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). To show "actual innocence," a petitioner must present clear and convincing evidence that no reasonable juror would have convicted him if not for the alleged trial errors. *Id*.

Because Parker filed his habeas petition *pro se*, it must be held to less stringent standards than formal pleading drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980). A document filed *pro se* is "to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### I. Claims 1, 3, and 4

Claims 1, 3, and 4 all concern Parker's interrogation. As discussed above, Parker alleges that he was denied his right to effective assistance of counsel when his attorney failed to call him to testify at the pretrial suppression hearing (Claim 1); his motion for post-conviction relief was improperly denied on the basis that his testimony would not have altered the outcome of the pretrial suppression hearing (Claim 3); and his incriminating statements to the police were involuntary, due to Officer Thomas's wrongful re-initiation of the interrogation (Claim 4).

As an initial matter, Respondent contends that Claims 3 and 4 were not raised in Parker's direct appeal and post-conviction petition. The Court disagrees. Claim 3 is essentially a repetition of the properly-exhausted Claim 1—as Claim 3 simply asserts that the Illinois courts erred in denying Parker's post-conviction petition that set forth Claim 1. Parker's Claim 4 consists of his complaint that his incriminating statements should have been excluded because those statements arose out of Officer Thomas's wrongful re-initiation of contact with him. Parker's grievance about the improper inclusion of his incriminating statements due to the wrongful re-initiation was sufficiently raised in both his direct appeal and his Illinois post-conviction briefing. Therefore, Parker has exhausted Claims 3 and 4 and they—along with Claim 1—are properly considered by this Court.

As noted above, to merit habeas relief the state court decision must have either been "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "based on an unreasonable

11

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). For his claims for ineffective assistance of counsel before the state courts, Parker was required to show that his trial counsel's performance was so deficient that it fell below an objective standard of reasonableness and that he was prejudiced by such deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). The Illinois Appellate Court determined that, even admitting Parker's proposed testimony, he could not show prejudice—for his proposed testimony affirmed that he was the one who re-initiated contact with the officers and thus his incriminating statements would not have been suppressed. (*People v. Parker*, No. 3-04-0574 (Ill. App. Ct. 2009) at 4–5, Ex. E to Resp.'s Answer at 11, Dkt. No. 13-6.)

Specifically, according to Parker's testimony at his post-conviction petition evidentiary hearing, after he asked for his counsel, Thomas read Parker the warrant for his arrest and told him that it would benefit him to speak with the officers. (*Id.* at 4.) Parker then asked Thomas about the whereabouts of his mother. (*Id.*) And it was upon learning that his mother was being questioned that Parker—out of fear that his mother would be implicated criminally—asked to speak with the detectives, which then resulted in the inculpating interrogation. (*Id.* at 10.) The Illinois Appellate Court thus determined that Thomas's comment about it benefiting Parker to speak to the officers did not actually lead Parker to speak to the officers. (*Id.*) The Illinois Appellate Court also determined that Thomas's response to Parker's question about his mother simply stated the fact of his mother's whereabouts and was not intended to elicit incriminating statements. (*Id.* at 10–11.) Based on these factual determinations, the Illinois Appellate Court found that it was Parker that re-initiated the interrogation. (*Id.* at 10.)

In so reasoning, the Illinois Appellate Court properly stated the applicable federal law and its findings of fact were not unreasonable in light of the evidence. Reasonable minds may differ about how Thomas's comment impacted Parker's decision to speak to the officers again. And reasonable minds also may differ on whether Thomas's response to Parker's question about his mother's whereabouts was intended to elicit incriminating statements. But that is not enough to merit habeas relief. Under § 2254(d)(2), a state court decision is based on an unreasonable determination of the facts "if it rests upon fact-finding that ignores the clear and convincing weight of the evidence. [E]ven if [r]easonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the [underlying] court's . . . determination." *Pruitt v. Neal*, 788 F.3d 248, 263–64 (7th Cir. 2015) (internal quotations and citations omitted). Nor can this Court say that the Illinois Appellate Court's application of the law was "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) ("[U]nreasonable" means "something like lying well outside the boundaries of permissible differences of opinion." (internal citations omitted)). Thus, Claims 1 and 3 do not merit habeas relief. And as a result, Claim 4—which asserts that Parker's inculpating statements were made involuntary by Officer Thomas's purported re-initiation of the interrogation—also fails.

## II.  Claim 2

Claim 2 asserts that Parker was denied effective assistance of counsel because his attorneys failed to present evidence to impeach the testimony of Officer Thomas at the suppression hearing. Specifically, Parker claims that Thomas's testimony that he was watching Parker's interrogation on the television was contradicted by the testimony of another officer at

13

the scene, Officer Brown. Parker complains that his counsel[2] did not notice this inconsistency and this failure prejudiced his ability to expose Officer Thomas's lack of credibility.

Parker did not raise this argument in his initial state court proceedings—either on direct appeal or in his state post-conviction petition. As a result, Parker requested a stay of proceedings on the federal habeas petition so that he could exhaust his state remedies. (Mot. to Hold Pending Habeas Corpus Pet. in Abeyance at 2–3, Dkt. No. 18.) Parker then moved for leave to file a successive post-conviction petition. As noted, that petition failed to garner relief because Parker failed to establish cause and prejudice as required for a successive post-conviction petition under Illinois law. The Illinois courts' determination that Parker failed to establish cause and prejudice constitutes an independent and adequate state procedural ground for the decision. *See Woods*, 589 F.3d at 376. And Parker does not argue here that there was cause and prejudice with respect to his procedural default in the state courts or that he is actually innocent. Thus, this Court cannot review the merits of Claim 2. *Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008) (stating that when petitioner fails to argue any excuse for procedural default of claim, "we cannot consider his claim").

---

[2] Insofar as Parker's claim for habeas relief is based on the purported ineffective assistance of his post-conviction appellate counsel, such a claim is not cognizable, as "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i); *see also Martinez v. Ryan*, 566 U.S. 1, 17 (2012) ("[Section] 2254(i) precludes [a habeas petitioner] from relying on the ineffectiveness of his postconviction attorney as a ground for relief." (internal quotation marks omitted)); *Johnson v. McBride*, 381 F.3d 587, 590 (7th Cir. 2004) ("Once trial and direct appeals have run their course . . . neither the sixth amendment nor federal law guarantees effective assistance of counsel for collateral proceedings."). Accordingly, the Court denies any request for habeas relief based on the actions of Parker's post-conviction counsel.

### III. Amended Claim 5

In his amended and supplemented habeas petition, filed with this Court on March 17, 2014, Parker withdrew his original Claim 5—*i.e.*, his claim that his 60-year maximum sentence violated his due process rights as his prior offenses were mischaracterized. In its place, Parker advances an amended Claim 5. The amended Claim 5 asserts that Parker's due process rights were violated when he was convicted of both first-degree murder and involuntary manslaughter. (Amends. and Supp. to Habeas Pet., Dkt. No. 60, at 3–8.) This is the first time that such a claim has been raised in this Court. It is not related to any of the claims in Parker's original petition—in fact, it is completely different from his other claims.

Consequently, the Court cannot consider Parker's amended Claim 5 because it is time-barred. There is a one-year statute of limitations for "a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). Thus, Parker was required to file his habeas petition a year from when his conviction became final. As Parker's conviction became final on December 29, 2009, he had until December 29, 2010 to file. *Id*. Parker timely filed his initial habeas petition in December 2009 but the amended Claim 5 was not raised in that petition and was not otherwise raised in this Court until March 17, 2014. As a result, the one-year statute of limitations has run for that claim. Furthermore, the amended Claim 5 does not relate back to any of the claims in Parker's original petition, nor does any statutory or equitable tolling apply.

## CONCLUSION

For the foregoing reasons, Parker's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied. Since reasonable jurists would not find this Court's ruling debatable, *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), this Court declines to certify any issues for appeal under 28 U.S.C § 2253(c) as to the denied claims.

ENTERED:

Dated: June 27, 2018

Andrea R. Wood
United States District Judge